# EXHIBIT 45

DEPARTMENT OF HEALTH & HUMAN SERVICES

Office of the Secretary

Director
Office for Civil Rights
Washington, D.C. 20201

May 6, 2025

**Re: Nondiscrimination Requirements for Medical Schools on the Basis of Race, Color, and National Origin pursuant to *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023)**

Dear Colleagues: *Guidance Addresses Federal Prohibitions on Explicit and Pretextual Race-Based Discrimination*

The U.S. Department of Health and Human Services (HHS or the Department) is committed to ensuring that students are not subject to discrimination on the basis of race, color, or national origin in medical schools that receive federal financial assistance from HHS. This letter aims to clarify and reaffirm existing legal requirements under Title VI of the Civil Rights Act of 1964 (Title VI),[1] Section 1557 of Affordable Care Act (Section 1557),[2] the Equal Protection Clause of the United States Constitution, and other applicable authorities.[3]

We are concerned that some American educational institutions, including medical schools, have discriminated against students on the basis of race, including white, Jewish, and Asian students, including those from disadvantaged backgrounds or low-income families. These institutions have adopted race-conscious policies under a broader umbrella of concepts known as "systemic and structural racism" and "diversity, equity, and inclusion" (DEI) to incorporate race-based criteria into training and discipline.

Regardless of the terminology used, discrimination on the basis of race, color, or national origin remains unlawful.

The Supreme Court's recent decision in *Students for Fair Admissions v. Harvard* (*SFFA*),[4] held that two universities' use of racial stereotypes or considering race as a factor in school admissions did not satisfy strict scrutiny and was therefore unlawful. Admissions programs that rely on an amorphous

---

[1] Title VI provides that: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d, et seq.; 45 C.F.R. § 80, et seq.

[2] Section 1557, which incorporates Title VI, provides that: "[A]n individual shall not, on the ground prohibited under [Title VI, including race, color, or national origin] … be excluded from participation in, denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance[.]" 42 U.S.C. § 18116, as implemented by 45 C.F.R. Part 92.

[3] This document provides significant guidance under the Office of Management and Budget's Final Bulletin for Agency Good Guidance Practices, 72 Fed. Reg. 3432 (Jan. 25, 2007). This guidance does not have the force and effect of law and does not bind the public or create new legal standards. This document is designed to provide clarity to the public regarding existing legal requirements under Title VI, Section 1557, the Equal Protection Clause, and other federal civil rights and constitutional law principles. If you are interested in commenting on this guidance, please email your comment to OCR@hhs.gov or write to the following address: Office for Civil Rights, U.S. Department of Health and Human Services, 200 Independence Avenue, S.W., Washington, D.C. 20201.

[4] *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 230 (2023) (invalidating race-based admissions programs at Harvard University and the University of North Carolina under the Equal Protection Clause).

1

diversity rationale or that seek racial balancing do not pass muster under the Equal Protection Clause: the former is "not sufficiently coherent for purposes of strict scrutiny,"[5] and the latter is "patently unconstitutional".[6]

Broad concepts such as racial balancing and diversity are not compelling interests for purposes of satisfying strict scrutiny. As the Court explained in *SFFA*, "an individual's race may never be used against him" and "may not operate as a stereotype" in decision-making.[7] Additionally, as the *SFFA* majority noted, "discrimination that violates the Equal Protection Clause of the Fourteenth Amendment committed by an institution that accepts federal funds also constitutes a violation of Title VI."[8]

The core principle is simple: an educational institution may not treat a person of one race differently than how it treats another person simply because of their race. Accordingly, federal law prohibits covered entities from relying on race or racial stereotypes in decisions pertaining to admissions, hiring, promotion, compensation, financial aid, scholarships, prizes, administrative support, discipline, housing, graduation ceremonies, and the like.

Additionally, while some programs may appear facially neutral, closer scrutiny may reveal that they function as proxies for race-based decision-making, which is inconsistent with federal law.[9] For example, medical institutions may not use application materials—such as personal statements, writing samples, or extracurricular activities—as a means to infer a student's race and then apply differential treatment based on that inference.[10] Additionally, certain DEI programs may confer advantages or impose burdens based on generalizations associated with racial identity, rather than evaluating individuals on their own merits. Such programs can create a hostile environment, denying a student the ability to participate fully in school life because of the student's race.

The Department is not aware of any circumstance in which the use of facially neutral criteria as a proxy for race satisfies the exacting standard of strict scrutiny required under federal law. This holds true regardless of whether such practices are applied on an individualized basis or implemented as part of a broader institutional framework.

It appears that many medical schools may have yet to come into compliance with the Supreme Court's decision in *SFFA*. In one reported case from last year, whistleblowers alleged that the medical school in question was admitting unqualified applicants based on race.[11] At a minimum, public-facing online materials from several medical schools raise questions about whether the principles set forth in *SFFA*

---

[5] *Id*. at 214.

[6] *Id*. at 223.

[7] *Id*. at 218. *See also Adarand Constructors, Inc. v. Pena*, 515 U.S. 200 (1995) (reinforcing that all racial classifications imposed by the federal government must be analyzed under "strict scrutiny," in the context of public contracting and grant programs, and rejected the notion that benign or remedial motivations could insulate racial classifications from constitutional challenge, further underscoring that race may not be used as a proxy in governmental decision-making absent an exceedingly persuasive justification).

[8] *Id*. at 198 n. 2 (quoting *Gratz v. Bollinger*, 539 U.S. 244, 276, n. 23 (2003)).

[9] *Village of Arlington Heights v. Metro. Hous. Dev. Corp*., 429 U.S. 252, 265 (1977).

[10] *Students for Fair Admissions*, 600 U.S. at 230 ("[U]niversities may not simply establish through application essays or other means the regime we hold unlawful today.").

[11] Aaron Sibarium, *'A Failed Medical School': How Racial Preferences, Supposedly Outlawed in California, Have Persisted at UCLA*, Washington Free Beacon (May 23, 2024), https://freebeacon.com/campus/a-failed-medical-school-how-racial-preferences-supposedly-outlawed-in-california-have-persisted-at-ucla (last accessed on April 23, 2025).

2

have been fully integrated into current admissions policies.

**Title VI, Section 1557, and the Equal Protection Clause**

Title VI of the Civil Rights Act of 1964 was enacted to secure the promise of equality under the law enshrined in the Equal Protection Clause.[12]  It provides:

> No person in the United States shall, on the basis of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.[13]

Pursuant to the Supreme Court's decision in *SFFA*, medical school admissions programs that use race as a selection criterion violate the Equal Protection Clause's prohibition on intentional discrimination, and by extension, Title VI.[14]  The Court unequivocally concluded that such programs cannot satisfy constitutional strict scrutiny.[15]  Given that Section 1557 incorporates Title VI, such discriminatory practices violate the Affordable Care Act as well.

The Department is committed to enforcing federal civil rights laws that prohibit both explicit and pretextual forms of race-based discrimination.

**Enforcement Action**

HHS is responsible for ensuring that institutions of higher education that receive federal funds from the Department, including medical schools, comply with Title VI.  Title VI not only protects faculty and students from discrimination, but it also protects the health and safety of patients by ensuring that their medical providers are admitted and evaluated at their medical schools based on merit and clinical skills, not race.

All medical students have the right to learn in an environment free from discrimination.  HHS remains committed to upholding and advancing that principle.

This letter outlines HHS' current interpretation of federal law; additional legal guidance will be provided as appropriate.  HHS will continue to enforce federal civil rights laws consistently across all medical schools receiving federal financial assistance.

All medical schools are advised to: (1) ensure that all policies, procedures, and practices are fully consistent with applicable federal civil rights laws; (2) discontinue the use of any criteria, tools, or processes that serve as substitutes for race or are intended to advance race-based decision-making; and (3) cease reliance on third-party contractors, clearinghouses, or data aggregators that engage in prohibited uses of race.  Medical schools found to be out of compliance with federal civil rights law

---

[12] *See* 110 Cong. Rec. 1519 (1964) (the purpose of Title VI was "to ensure that Federal funds are spent in accordance with the Constitution and the moral sense of the nation") (statement by Senator Humphrey).
[13] 42 U.S.C. 2000d.
[14] *See* 600 U.S. at 198 n. 2 ("'[D]iscrimination that violates the Equal Protection Clause of the Fourteenth Amendment committed by an institution that accepts federal funds also constitutes a violation of Title VI.'" (quoting *Gratz v. Bollinger*, 539 U.S. 244, 276, n. 23 (2003)).
[15] *Id.* at 213-225.

3

may, consistent with applicable law, be subject to investigation and measures to secure compliance which may, if unsuccessful, affect continued eligibility for federal funding.[16]

Anyone who believes that a recipient of HHS funding has unlawfully engaged in discrimination may file a complaint with the U.S. Department of Health & Human Services Office for Civil Rights (OCR). Information about filing a complaint with OCR, including a link to the online complaint form, is available here.

The Department will prioritize investigations of medical schools that: (1) use race as part of their application or employment processes; (2) require prospective students, employees, or faculty to submit DEI or diversity statements in connection with hiring or promotion; or (3) lack clear policies demonstrating compliance with *SFFA*.

As the Supreme Court affirmed, "Eliminating racial discrimination means eliminating all of it."[17] HHS stands resolute in its obligation to uphold this mandate through vigilant enforcement of Title VI and Section 1557. Institutions entrusted with training the next generation of physicians must ensure that access to opportunity is not contingent on race but grounded in fairness and merit.

Sincerely,

/s

Anthony F. Archeval
Acting Director
HHS Office for Civil Rights

---

[16] *See* 42 U.S.C. § 2000d-1; 45 C.F.R. § 80.8; 45 C.F.R. § 92.301.
[17] *Students for Fair Admission, Inc.*, 600 U.S. at 206.