UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, et al., <br><br> Defendants. | Case No. 3:25-cv-07864-RFL <br><br><br> **DECLARATION OF CIR J. DOE** |

**DECLARATION OF CIR J. DOE**

I, Dr. J. Doe, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am currently employed as a resident physician in General Psychiatry within the University of California system. I have personal knowledge of the facts contained in this declaration, and I am competent to testify to these facts.

2. I am submitting this declaration in support of Plaintiffs' Motion for a Preliminary Injunction. I am submitting this declaration in my individual capacity and not on behalf of my employer.

3. I am a physician by training. I received my medical degree from a medical school within the University of California system.

4. I am a member in good standing of the Committee of Interns and Residents, SEIU ("CIR").

5. I am aware that President Trump and his administration have taken a series of actions to try to remove from university campuses diversity, equity, and inclusion ("DEI") programs and other topics and viewpoints they disfavor, including what the administration has described as "woke gender ideology," but which I understand to include the provision of gender-inclusive care and a gender-inclusive environment at UC locations, including its hospitals and clinics.

6. I am aware that on or around July 30-August 1, the Trump administration suspended more than $500 million in federal funding for the University of California, Los Angeles ("UCLA"). It is my understanding that the Trump administration is investigating the University of California ("UC") for alleged antisemitism and other alleged violations of Title VI, Title VII, and Title IX, and has cited these pending investigations and/or the UC's alleged policies regarding race and transgender people, as the basis for the suspension of federal funds from UCLA. It is also my understanding that the Trump administration is demanding, as a condition of restoring the suspended federal funds, that the UC Regents pay at least $1 billion to the federal government and agree to a host of programmatic demands that would harm transgender and other members of the UC community. Specifically, I am aware that the Trump administration issued a demand letter to the UC that reportedly includes demands that the UC stop providing gender-affirming care to transgender minors and refuse to recognize gender

diversity among employees and visitors, although a copy of the demand letter has not been publicly shared.

7. I understand that the Trump administration has threatened to cut more federal funds from the UC if it does not comply with the administration's demands. I am also aware that the Trump administration has previously targeted other universities with similar threats and demands.

8. I am transgender and non-binary (they/them). As a recipient of healthcare at UC locations, it is crucial for me to be able to receive competent and humanizing clinical care. I currently have a trusting and positive relationship with my UC care providers, in no small part because they validate my gender identity and provide care that meets my specific and personal needs without pathologizing my gender identity.

9. If the UC were forced to make the changes set out by the Trump administration in its demand letter, including refusing as an institution to recognize transgender people's identities, I would be irreparably harmed. I would fear for myself, my healthcare, and the care I would be able to provide for my patients.

10. If my UC care providers were unable to recognize and validate my gender identity, I would experience a rupture in the relationship between me, the patient, and my doctors. Recognition of my gender identity is an essential aspect of my medical care, as it ensures emotional security, reduces the risk of clinical errors, fosters trust in my providers, and promotes my continued engagement and adherence to treatment.

11. If the UC became hostile to transgender and non-binary patients and employees, as the demand letter contemplates, I would suffer irreparable dignitary harms in that my employer would have repudiated the existence of my identity. I would also be immediately concerned about my personal information being shared with federal agencies, given that the Trump administration has already demanded the UC to provide information about certain employees. I also fear that I would become unable to continue to access necessary healthcare for myself. That is, if my healthcare providers were to reject the existence of transgender and non-binary identities, the quality of my care would be directly undermined as my providers would be failing to recognize my full humanity. This would both interfere with any care directly related to my gender identity and would make me

1 imminently less likely to maintain continued care for chronic conditions unrelated to my gender identity.

12. Because I currently practice in general psychiatry, I do not currently provide care to minors under the age of 18 within the UC system. However, it is likely I will provide psychiatric care to minors in the future, either as part of a child and adolescent psychiatry rotation during my current residency or as part of a post-residency fellowship focused on child psychiatry. Gender-affirming care can fall under the scope of child and/or adolescent psychiatry because some but not all of transgender minors can experience psychiatric distress when their gender identity does not align with their publicly-perceived gender and/or the sex they were assigned at birth. I view psychiatric care to transgender youth as, when necessary, vital and life-saving work. If I was not able to provide gender-inclusive care to minors at the UC because of changes to its policies in the face of demands from the Trump administration, I would be forced to choose between acting contrary to my medical judgment and ethical obligations by denying care I deemed necessary and facing the professional repercussions of seeking alternative employment to avoid these ethical concerns

13. I have previously spoken publicly, including through written work published online, about best practices for providing care to transgender youth and more generally on transgender care.

14. I understand that gender-inclusive topics and viewpoints are disfavored by the Trump administration.

15. Because the Trump administration's threats to the UC have made me fear that my prior writing will put me and/or my employer at risk, I have requested that some of my writings be removed from various online platforms and I intend to avoid speaking on certain topics while these threats are pending.

16. I fear I will be subject to targeted harassment and threats to my career if I reveal my identity in making this declaration. Therefore, I am submitting this under a pseudonym, J. Doe, which is not my real name. The Trump administration and third parties have expressed extremely hostile views and policies regarding people who are transgender or non-binary, and physicians who provide gender-affirming care to transgender minors. Because I am a transgender, non-binary healthcare provider who will likely provide gender-affirming care to transgender minors in the future, I feel I

need to give this declaration in pseudonym or I could be retaliated against by the government or third parties in the form of targeted harassment and interference with ability to practice my chosen profession.

17. I also fear for my personal safety and the safety of my patients if I am required to publicly identify myself as providing information against the Defendants.

18. Because of these fears, I would not provide this information if my identity was not anonymous.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 8, 2025 in California.

Signed: /s/ J. Doe
Dr. J. Doe
Resident Physician