1
2
3
4

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, et al., <br><br> Defendants. | Case No. 3:25-cv-07864-RFL <br><br> **DECLARATION OF CHRISTOPHER KUTZ IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

I, Christopher Kutz, declare as follows:

1. I am the C. William Maxheiner Distinguished Professor of Law at the University of California, Berkeley ("UC Berkeley") Law School, and Professor by courtesy of the UC Berkeley's Departments of Philosophy and Political Science. I am also the creator and Faculty Director of the undergraduate minor in Philosophy, Politics, and Law and a member of the UC Berkeley Academic Senate's Committee on Privilege and Tenure. I have been a member of UC Berkeley's faculty since 1998.

2. This declaration is submitted in support of Plaintiffs' Motion for a Preliminary Injunction.

3. I am over the age of 18 and competent to testify as to the matters set forth in this declaration based on my own personal knowledge.

4. I have a B.A. in Philosophy from Yale University, a J.D. from Yale Law School, and a Ph.D. in Philosophy from UC Berkeley.

5. I am Jewish and have researched and taught courses covering the Israel-Palestine conflict and Israeli occupation of Palestinian territories.

6. My research and teaching focuses on moral, political, and legal philosophy, including the topics of: affirmative action, trans-rights, rule of law, freedom of speech, immigration, the ethics of war, law of occupation and the rights of national self-determination, abortion, and fascist, authoritarian, and liberal-democratic models of politics. I teach or have taught in the past courses on the ethics of war, criminal law, international law, constitutional theory, legal theory, race and punishment, and moral philosophy. I have also published books or academic articles on: war and democracy; torture and the law of war; legal ethics; rationality and rule of law; criminal law; collective action; parliamentary self-government; collective citizenship; equality and democratic politics; and reparations.

7. I am a member of the Berkeley Faculty Association ("BFA") and the American Association of University Professors. I am also a member of the BFA Academic Freedom Committee.

**Awareness of Government Actions**

8. I am aware that President Trump has pledged "to reclaim our once great educational institutions from the radical Left and Marxist maniacs," and that since taking office, President Trump and his administration have taken a series of actions to try to remove from university campuses diversity,

equity, and inclusion ("DEI") programs and other topics and viewpoints they disfavor, such as "woke gender ideology" and "the Green New Deal," "the Climate Hoax," among others.

9. I am aware of incidents in which students and staff at UC and other universities have been reported to Defendants for their speech, activism, and advocacy on behalf of causes or issues that Defendants disfavor. This includes an instance in which multiple Jewish Harvard students and faculty who advocated for an end to Israel's war in Gaza were included in a memorandum submitted to the Defendant Department of Education, naming them as allegedly antisemitic.

10. I am aware that on or around July 30-August 1, the Trump administration suspended more than $500 million in federal funding for the University of California, Los Angeles ("UCLA"). It is my understanding that the Trump administration is investigating the University of California ("UC") for alleged antisemitism and other alleged violations of Title VI, Title VII, and Title IX, and has cited these pending investigations and/or UC's alleged policies regarding race and transgender people, as the basis for the suspension of federal funds from UCLA.

11. I understand that the Trump administration made a series of demands upon UCLA on August 8th ("August 8th Demands"). UC has not shared the exact contents of the August 8th Demands from the Trump administration, which contributes to the atmosphere of fear and uncertainty for faculty, employees and students of UC.

12. Based on reporting on the August 8 Demands, I understand that they include approximately $1.2 billion in fines and other financial penalties. I am also aware that the Demands include a series of harmful policy changes, which I understand to include:

- Greater cooperation between UCLA and federal law enforcement, which I understand to include expanded collaboration with Immigration and Customs Enforcement ("ICE");
- Granting the government access to all UCLA documents, records, and data not protected by attorney-client privilege;
- Stricter restrictions on protests on UCLA's campus;
- Rescinding UCLA's recognition of transgender identities and restrictions on transgender individuals' access to bathrooms and other campus facilities;

1  - Prohibiting the provision of gender-affirming care for minors by UCLA Health;

2  - Appointing a senior administrator to review all of UCLA's 'diversity, equity, and inclusion' related policies in admissions and employment;

3  - Ending all race- and ethnicity-based UCLA scholarships and prohibiting UCLA from using criteria that serve as a proxy for race-conscious hiring, promotion, tenure, or other employment policies or practices;

4  - Prohibiting the admission of international students "likely to engage in anti-Western, anti-American" conduct and instituting "trainings to 'socialize' international students to campus norms"; and

5  - Appointing an outside monitor with significant authority over campus affairs to oversee UCLA's compliance with the demands.

13. I understand that the August 8 Demands do not provide any clear definition of either "diversity, equity, and inclusion" or "anti-Western" for the purposes of implementing those demands.

14. I understand that the UC is negotiating with the federal government to try to settle pending charges and investigations.

15. I am also aware that, in what seems to me like an effort to appease the Trump administration, UC has already taken steps that are inconsistent with past practices, and those actions are harming me and my colleagues. For example, I am aware that, in September 2025, the University of California, Berkeley ("UC Berkeley") disclosed the names of 160 faculty and staff who had been named in complaints about antisemitism to Defendants. Their names were in response to a U.S. Department of Education request for documents relating to alleged Title VI violations and investigations.

16. I also understand that the Trump administration has threatened to cut more federal funds from UC if it does not comply with the administration's demands.

17. I understand the Trump administration is engaging in other investigations targeting the UC system and has indicated that if UC does not agree to implement the administration's demands throughout the UC system as a whole, all of UC's federal funding will be at risk.

18. I am aware that the Trump administration has previously targeted other universities with similar threats and demands. I understand the administration cut hundreds of millions and in some cases

billions of dollars in federal funding at other universities, including Harvard University, Columbia University, Brown University, and the University of Pennsylvania, based on alleged violations of Title VI, Title VII, and/or Title IX, and then has similarly conditioned restoration of those terminated funds on the universities' capitulation to monetary and ideological demands that extend far beyond correcting any alleged civil rights violations.

19. I am aware that the Trump administration's demands to targeted universities have included significant financial payouts to the federal government, as well as various restrictions on academic freedom and other forms of campus speech. For example, I am aware that the Trump administration demanded that Columbia place the Department of Middle Eastern, South Asian, and African Studies (MESAAS) under receivership. I am also aware that the Trump administration demanded that Harvard provide for "viewpoint diversity" among its faculty members, take away "power" from faculty members who may be perceived as "activists," and discontinue any practices that the Trump administration perceives to be connected to DEI principles.

20. I am aware the Trump administration has announced that it will tie federal funding for colleges and universities to its perception of recipient institutions' responses to alleged antisemitism. I am not aware of the administration providing any comprehensive definition of what views or actions it classifies as antisemitic. Nonetheless, I understand that the administration considers support for or solidarity with the Palestinian people or of opposition to the State of Israel, the Israeli occupation of Palestinian territories, or the War in Gaza to be antisemitic views. This understanding is based on actions and public statements of Trump administration officials, especially those of the Department of Education's Task Force to Combat Anti-Semitism, which has characterized such expressions as antisemitic on numerous occasions.

21. The demands the administration has made to the Regents with respect to UCLA and other universities strike at the very core of academic freedom and free-speech principles. In my view, a fundamental purpose of a university is to allow for the ventilation of a variety of viewpoints and serve as a forum for the development of ideas, even if the current administration may disfavor those ideas. Academic freedom is the basis of academic excellence. University faculty, researchers, and other academic staff cannot achieve excellence and expand the borders of knowledge if they believe that they,

1  their colleagues, or their institutions will be targeted because they express views or research topics that
2  the current administration may deem unfavorable and subject to sanction.

3  22.  I understand that Columbia, Brown, and the University of Pennsylvania have nevertheless
4  entered into agreements with the Trump administration to resolve the administration's investigations
5  against them, and that these agreements contain some of the terms that the Trump administration
6  demanded. For example, I am aware that Columbia agreed to pay $200 million to the federal
7  government, conduct a review of the MESAAS Department, hire faculty in certain subject areas that the
8  Trump administration deems favorable, and place certain restrictions on campus speech.

9  23.  From my perspective, it appears the Trump administration's recent funding cuts and
10 demands targeting the UC system are taken from the same playbook as its efforts to exert control over
11 these other universities.

### Chilling Effects of the Trump Administration's Threats to UC

13 24.  I believe that if the University capitulates to the August 8 Demands, as they have been
14 reported, it will apply some or all of those demands systemwide. This belief is based on the Trump
15 administration's and the University's recent actions and the nature of the Demands.

16 25.  I am aware that the Trump administration has stated its intention to investigate allegations
17 of antisemitism and potentially pursue enforcement action against at least four other UC campuses: UC
18 Berkeley; University of California, Davis; University of California, San Diego; and University of
19 California, Santa Barbara. I am also aware that in September 2025 UC Berkeley provided the Trump
20 administration with the names of at least 160 faculty and staff named in complaints of antisemitism.

21 26.  Further, many of the August 8 Demands conflict with systemwide UC policy and
22 compliance with those demands would require the University to either change or ignore those
23 systemwide policies. For instance, the Presidential Policy on Gender Recognition and Lived Name
24 requires campuses to recognize the gender with which an individual identifies and use individuals' self-
25 chosen names. This policy directly conflicts with the Trump administration's demand that UCLA cease
26 to recognize transgender identities. In order to comply with this demand, the University would either
27 have to ignore the fact that its largest campus was out of compliance with a systemwide Presidential
28 Policy or revise that policy to accommodate the administration's demand, which would impact all other

UC campuses. In fact, since the Trump administration began its attacks on UC, the University has already revised its systemwide policy on financial aid to prohibit financial aid, scholarships, fellowships, grants, loans, and other awards that take into account a student's race, sex, color, ethnicity, or national origin, thus partially complying with the August 8 Demands as a matter of systemwide policy.

27. These factors lead me to believe that Defendants intend to impose terms similar to the August 8 Demands on other UC campuses and that the University is willing to capitulate to such terms systemwide.

28. The actions that the administration has taken against other universities give further credibility to Defendants' threats against UC, and reinforce my belief that if UC capitulates to Defendants' demands, those demands will be applied systemwide, unless Defendants are enjoined.

29. The subjects I teach and research include: affirmative action, trans-rights, rule of law, freedom of speech, immigration, law of occupation, the rights of national self-determination, and the Israel-Palestine conflict, abortion, climate change, and fascist, authoritarian, and liberal-democratic models of politics. I have taught these topics since 1998. My research includes work on torture and law of war, just war theory, democratic norms, climate change and corporate social responsibility, and reparations. I have also taught many courses covering these topics, including courses titled Democracy and Equality, War & Peace, Ethical Dilemmas in Modern War, and Moral, Legal, and Political Philosophy.

30. I understand that Defendants disapprove of many of the subjects my research and teaching focus on, including affirmative action, trans-rights, climate change, the Israel-Palestine conflict, and immigration (collectively, "Disapproved Subjects"). This understanding is based on Defendants' public statements, pattern of cancelling or suspending grant funding for research and other programs that relate to these subjects, and attempts to deport non-citizen university students who espouse disfavored views on the Israel-Gaza war.

31. As a result of the Trump administration's actions and threats against UC, including the July 30 grant cancellations and August 8 Demands, I have made significant changes to my curriculum and teaching practices.

32. I teach many international or non-citizen students and I believe that, if UC capitulates to

the August 8 Demands, those students would be put in danger if I do not change my curriculum and teaching practices. Defendants have demanded that UC appoint an administrator to review all of UCLA's 'diversity, equity, and inclusion' policies and grant the federal government access to UCLA records. If this demand is applied systemwide, I understand that the academic records and documents of international students I teach will be available to Defendants. If these records and documents are made available, I believe that those students may be put at risk of retaliation or deportation based on written coursework that touches on Disfavored Subjects or their statements regarding Disfavored Subjects during in-class discussions.

33. In order to protect my international and non-citizen students should UC capitulate to the August 8 Demands, I have removed topics that I understand to be among Defendants' Disfavored Subjects from my curriculum. These topics include the Israel-Palestine conflict and rights of national self-determination. I have also placed stricter guard rails on in-class discussions in order to steer students away from Disfavored Subjects, including the Israel-Palestine conflict, fascism and authoritarianism, the rule of law, trans-rights, climate change, and subjects which could be construed as DEI related. This has significantly limited my ability to use current events for in-class discussions. I am also much more wary of my international and non-citizen students being surveilled and no longer allow recordings in my classroom, which can pose difficulties when students miss class.

34. By creating this need to self-censor my curriculum and teaching practices, Defendants' actions and demands have infringed upon my First Amendment rights and the principles of academic freedom and have degraded the quality of instruction I can provide my students.

35. Based on my observations of and interactions with students, I also believe that Defendants' actions have had a chilling effect on my students, who are considerably less vocal and less willing to engage in in-class discussions than past cohorts.

36. I have also made changes to my research agenda and publishing in response to Defendants' actions. I am currently developing a book project on national self-determination. I believe that the Israel-Palestine conflict is clearly relevant to this topic and something I should address in my project. Nonetheless, I am concerned that if UC capitulates to the August 8 Demands, addressing the Israel-Palestine conflict in my project could draw retaliation from the Trump administration or UC. As

such, I am considering refraining from addressing the conflict in my book to avoid retaliation if UC does capitulate. If I do address the conflict, I am concerned that I will have to limit and blunt my analysis of the issue in order to avoid retaliation, to the detriment of the project's analysis and intellectual impact.

37. As with Defendants' impact on my curriculum and teaching practices, the Defendants' actions and demands have created an imperative to self-censor my research and publishing, which infringes on my First Amendment rights and the principles of academic freedom.

38. I believe I must continue self-censoring my teaching and research so long as the August 8 Demands are pending. I believe that, if I do not continue to do so, I will risk drawing retaliation against my international and non-citizen students and against myself if the University capitulates and applies those demands systemwide. In particular, I fear that if I do not self-censor, I could draw Defendants' attention to my international and non-citizen students, which could result in significant harms to them, including cancellation of their immigration status and deportation.

39. I am not alone in these beliefs. Since Defendants began their attacks on UC, I have observed a distinct change in the atmosphere on campus. Both through my role on the Academic Senate Committee on Privilege and Tenure and through my personal interactions with faculty, many colleagues have expressed their fears and concerns related to Defendants' actions and demands to me. Many colleagues have expressed a fear that Zionist students or student groups may weaponize UC Berkeley's internal civil rights processes to attack pro-Palestinian faculty and that UC Berkeley will be willing to punish these professors due to the Trump administration's demands. Colleagues have also expressed alarm over the Regents' recent efforts to intensify the disciplinary process and consequences for non-academic speech. In both cases, colleagues have expressed to me that, if UC capitulates to the August 8 Demands, they are considering self-censoring their curriculum and research to avoid Disfavored Subjects, which they believe Defendants may retaliate against them for or UC may penalize them for. I believe that if UC capitulates to the Demands, many of my colleagues will choose to self-censor their curriculum or research due to their fear that some or all the terms of the August 8 Demands will be imposed on UC Berkeley or systemwide.

40. My colleagues and I have already suffered irreparable harm due to Defendants' attacks on UC and I believe that, if UC capitulates to the August 8 Demands, my colleagues and I will suffer

further irreparable harm, including harms related to faculty beginning or continuing to self-censor their curriculum and research and to international and non-citizen faculty and students being placed at increased risk of detrimental immigration enforcement actions.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 4th day of October, 2025.

Christopher Kutz
Member, BFA
Academic Freedom Committee Member, BFA