1
2
3
4
5
6
7

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, et al., | Case No. 3:25-cv-07864-RFL |
| Plaintiffs, | **DECLARATION OF DARLENE LEE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al., | |
| Defendants. | |

17
18
19
20
21
22
23
24
25
26
27
28

DECLARATION OF DARLENE LEE

Case No. 3:25-cv-07864-RFL

Docusign Envelope ID: D2F2D471-98B9-4A30-82DE-E5AB3D13D38B
Case 3:25-cv-07864-RFL    Document 29-26    Filed 10/09/25    Page 2 of 10

I, Darlene Lee, declare as follows:

1. I am a Lecturer and faculty advisor in the Teacher Education Program in the School of Education and Information Studies ("SEIS") at the University of California, Los Angeles ("UCLA"). I am also the Director of the Ethnic Studies Certificate Program ("ESCP") at UCLA's School of Education and Information Studies. I have been a member of UCLA's faculty since 2007.

2. This declaration is submitted in support of Plaintiffs' Motion for a Preliminary Injunction.

3. I am over the age of 18 and competent to testify as to the matters set forth in this declaration based on my own personal knowledge.

4. I have a B.A. in Business, Economics, and Education, a Masters in Education, and a Teaching Credential from UCLA.

5. ESCP is a training program for K-12 ethnic studies teachers, who receive an Ethnic Studies Certificate upon completion of the program. The program is a collaboration between UCLA's Teacher Education Program, Center X, American Indian Studies Center, Asian American Studies Center, Bunche Center for African American Studies, Chicano Studies Research Center, and Extension School. I have served as the ESCP Faculty Advisor since 2022. Before that I spent a year developing the program.

6. I am a member of the University Council-American Federation of Teachers ("UC-AFT"). I am also a member of the Executive Committee of UC-AFT's UCLA Chapter.

7. UC-AFT is a labor organization and the exclusive bargaining representative of approximately 7,000 librarians and teaching faculty across ten University of California ("UC" or the "University") campuses. UC-AFT's members teach approximately 30-40 percent of UC's credit hours, providing crucial mentorship and support to its most marginalized and historically underserved student populations. UC-AFT's members are also stewards of the largest library system in the world, protecting California's vital records and its cultural heritage. UC-AFT's members include writers and architects, scientists and world-class musicians, nurses and lawyers, librarians and archivists, scholars and artists, K-12 instructors and supervisors of teacher

2

DECL. OF DARLENE LEE ISO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION                     Case No. 3:25-cv-07864-RFL

education. Through its contract campaigns, UC-AFT has fought for and won reappointment protections that create more stable career pathways for teaching faculty at every stage of their careers. Since 2003, when UC-AFT first secured landmark protections for Continuing Lecturers, UC-AFT has worked to transform teaching "gigs" into stable, full-time jobs.

### Awareness of the Trump Administration's Actions

8. I am aware that President Trump has pledged "to reclaim our once great educational institutions from the radical Left and Marxist maniacs," and that since taking office, President Trump and his administration have taken a series of actions to try to remove from university campuses diversity, equity, and inclusion ("DEI") programs and other topics and viewpoints they disfavor, such as "woke gender ideology" and "the green new deal," among others.

9. I am aware that on or around July 30-August 1, the Trump administration suspended more than $500 million in federal funding for UCLA. It is my understanding that the Trump administration is investigating UC for alleged antisemitism and other alleged violations of Title VI, Title VII, Title IX, and has cited these pending investigations and/or UC's alleged policies regarding race and transgender people, as the basis for the suspension of federal funds from UCLA.

10. I understand that the Trump administration made a series of demands to UCLA on August 8th ("August 8th Demands"). UC has not shared the exact contents of the August 8th Demands from the Trump administration, which contributes to the atmosphere of fear and uncertainty for Lecturers. I understand that the reason UC has provided for not sharing the demand letter is that the Trump Administration designated it a confidential settlement communication.

11. Based on reporting on the August 8 Demands, I understand that they include approximately $1.2 billion in fines and other financial penalties. I am also aware that the Demands include a series of harmful policy changes, which I understand to include:

- Greater cooperation between UCLA and federal law enforcement, which I understand to include expanded collaboration with Immigration and Customs Enforcement;

- Granting the government access to all UCLA documents, records, and data not protected by attorney-client privilege;
- Stricter restrictions on protests on UCLA's campus;
- Rescinding UCLA's recognition of transgender identities and restrictions on transgender individuals' access to bathrooms and other campus facilities;
- Prohibiting the provision of gender-affirming care for minors by UCLA Health;
- Appointing a senior administrator to review all of UCLA's 'diversity, equity, and inclusion' related policies in admissions and employment;
- Ending all race- and ethnicity-based UCLA scholarships and prohibiting UCLA from using criteria that serve as a proxy for race-conscious hiring, promotion, tenure, or other employment policies or practices;
- Prohibiting the admission of international students "likely to engage in anti-Western, anti-American" conduct and instituting "trainings to 'socialize' international students to campus norms"; and
- Appointing an outside monitor with significant authority over campus affairs to oversee UCLA's compliance with the demands.

12. I understand that the August 8 Demands do not provide any clear definition of either "diversity, equity, and inclusion" or "anti-Western" for the purposes of implementing those demands.

13. I understand that UC is negotiating with the federal government over the August 8 Demands to try to settle pending charges and investigations.

14. I am also aware that, in what seems to me like an effort to appease the Trump administration, UC has already taken steps that are inconsistent with past practices, and those actions are harming me and my colleagues. For example, I am aware that, in September 2025, the University of California, Berkeley disclosed the names of 160 faculty and staff who had been named in complaints about anti-Semitism to Defendants. Their names were disclosed in response

4

DECL. OF DARLENE LEE ISO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION                                        Case No. 3:25-cv-07864-RFL

to a U.S. Department of Education request for documents relating to alleged Title VI violations and investigations.

15. I also understand that the Trump administration has threatened to cut more federal funds from UC if it does not comply with the administration's demands.

16. I understand the Trump administration is engaging in other investigations targeting the UC system and has indicated that if UC does not agree to implement the administration's demands throughout the UC system as a whole, all of UC's federal funding will be at risk.

17. I am aware that the Trump administration has previously targeted other universities with similar threats and demands. I understand the administration cut hundreds of millions and in some cases billions of dollars in federal funding at other universities, including Harvard University, Columbia University, Brown University, and the University of Pennsylvania, based on alleged violations of Title VI, Title VII, and/or Title IX, and then similarly conditioned restoration of those terminated funds on the universities' capitulation to monetary and ideological demands that extend far beyond correcting any alleged civil rights violations.

18. I am aware that the administration's demands to targeted universities have included significant financial payouts to the federal government, as well as various restrictions on academic freedom and other forms of campus speech. For example, I am aware that the Trump administration demanded that Columbia place the Department of Middle Eastern, South Asian, and African Studies (MESAAS) under receivership. I am also aware that the Trump administration demanded that Harvard provide for "viewpoint diversity" among its faculty members, take away "power" from faculty members who may be perceived as "activists," and discontinue any practices that the Trump administration perceives to be connected to DEI principles.

19. I am aware the Trump administration has announced that it will tie federal funding for colleges and universities to its perception of recipient institutions' responses to alleged antisemitism. I am not aware of the administration providing any comprehensive definition of what views or actions it classifies as antisemitic. Nonetheless, I understand that the administration considers support for or solidarity with the Palestinian people or of opposition to the State of Israel,

the Israeli occupation of Palestinian territories, or the War in Gaza to be antisemitic views. This understanding is based on actions and public statements of Trump administration officials, especially those of the Department of Education's Task Force to Combat Anti-Semitism, which has characterized such expressions as antisemitic on numerous occasions.

20. The demands the administration has made to the Regents with respect to UCLA and other universities strike at the very core of academic freedom and free-speech principles. In my view, a fundamental purpose of a university is to allow for the ventilation of a variety of viewpoints and serve as a forum for the development of ideas, even if the current administration may disfavor those ideas. University faculty, researchers, and other academic staff cannot serve this function if they believe that they, their colleagues, or their institutions will be targeted because they express views or research topics that the current administration may deem unfavorable.

21. I understand that Columbia, Brown, and the University of Pennsylvania have nevertheless acceded to the Trump administration's demands. For example, I am aware that Columbia agreed to pay $200 million to the federal government, conduct a review of the MESAAS Department, hire faculty in certain subject areas that the Trump administration deems favorable, and place certain restrictions on campus speech.

22. From my perspective, it appears the Trump administration's recent funding cuts and demands targeting the UC system are taken from the same playbook as its efforts to exert control over these other universities. The actions taken against other universities have made me aware that the Trump administration's threats against UC are credible and likely to be acted upon.

### Chilling Effects of the Trump Administration's Actions and Demands

23. Defendants' actions and demands have had a chilling effect on my academic and professional speech. Due to Defendants' actions, I have chosen to censor my presentation at one professional conference and fully withdraw from another professional conference. In both instances, I believed that due to Defendants' actions, delivering my original presentation as scheduled would have increased the risk that ESCP will be cancelled.

24. While ESCP has been the target of criticism from far-right groups since its

6

DECL. OF DARLENE LEE ISO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION                                Case No. 3:25-cv-07864-RFL

1  inception, since the Trump administration began its attacks on UCLA and other universities, that
2  criticism has intensified into attacks demanding the program's cancellation. These groups have
3  attacked the ESCP because the program includes material on the occupation of Palestine and
4  genocide of the Palestinian people, civil rights and Black Power, and critical perspectives on
5  terrorism and global conflicts, all topics that I understand the Defendants to disfavor because
6  they associate these topics with the "radical Left" and DEI. One of the key allegations these
7  groups have made is that ESCP is antisemitic because of its inclusion of material that focuses on
8  the Palestinian people's perspective in the occupation of Palestine and genocide of Palestinians.

9    25.    Defendants have made clear their goal of eliminating programs that they see as
10 teaching DEI messages or ideologies from American universities. Many Trump administration
11 officials have stated outright their desire to purge American universities of DEI programs,
12 'woke' ideology, and other ideas they see as "far-Left." Further, the Trump administration has
13 taken actions to try to expel DEI related programs, curriculum, and research from other
14 university campuses. Because of its focus on developing diverse and inclusive K-12 curriculum
15 and supporting teachers of color, I understand ESCP to fall within the category of DEI programs
16 that Defendants wish to eliminate from US higher education.

17    26.    I believe that the threat that ESCP will be cancelled has increased significantly
18 since Defendants began their attacks on UCLA and other universities.

19    27.    As early as April 2025, this threat was significant enough to cause me to self-
20 censor my public speech. That month I attended the American Education Research Association
21 annual meeting. At the conference, I was scheduled to give a presentation on the needs of K-12
22 ethnic studies teachers and lack of support for them and how programs training those teachers
23 can provide them with better support once they return to teaching. Ultimately, I decided not to
24 give this presentation, though, and instead presented on how ethnic studies training provides
25 support for teachers of color that is often otherwise lacking in teacher education programs.

26    28.    I decided to change the topic of my presentation because, due to the added
27 pressure on the program from the Trump administration's attacks, I believed that my original

presentation would draw further attention to ESCP and further jeopardize the program. At the time, I was aware that the Trump administration was threatening to cut federal funding to UCLA and other universities.

29. Defendants' July 30 grant cancellations and August 8 Demands intensified the pressure on and threat to ESCP. Defendants' August 8 letter included a demand that UC appoint a senior administrator to conduct an extensive review of UCLA's DEI related admission and employment policies. Given Defendants' attacks on DEI related programs at other universities, the August 8 Demands lead me to believe Defendants intend to eliminate DEI related programs and curriculum at UCLA as well, using the senior administrator and outside monitor they have demanded UC appoint and the threat of further funding cuts to achieve this goal.

30. Defendants have stated that a key reason for their attacks on UCLA is alleged antisemitism at the school. Given its inclusion of material conveying Palestinians' perspectives on the occupation of Palestine and genocide of the Palestinian people, I understand ESCP to include content that Defendants consider antisemitic. For this reason, I believe that Defendants will be receptive to specious allegations that ESCP is antisemitic and will use the senior administrator and outside monitor they have demanded UC appoint in combination with other funding threats to attempt to force UCLA to cancel ESCP and I believe that UCLA will acquiesce to this pressure and eliminate ESCP to avoid potential federal grant cuts.

31. Because of my belief that Defendants' July 30 grant cancellations and August 8 Demands have placed ESCP at even greater threat of cancellation, I have self-censored my speech to avoid endangering the program any further.

32. In September 2025, I was scheduled to give a presentation entitled 'Teaching Truth in Hostile Times' at the 15th International Conference on Education and Justice. This presentation was intended to focus on the recent experience of right-wing attacks on ESCP, attacks on ethnic studies teachers, and the responsibility of ethnic studies teacher training programs to support teachers who face such attacks.

33. I ultimately decided to cancel my presentation, though, and pull out of the

conference entirely. Given my belief that ESCP was under heightened threat of cancellation due to Defendants' actions and demands, I believed that giving my presentation could further increase the threat of cancellation by drawing mor attention to the program. I chose to cancel my presentation to avoid that outcome.

### Material Impacts of the Trump Administration's Actions and Demands

34. Defendants' actions and demands also pose a risk of causing me imminent and irreparable material and professional harm if they are allowed to continue.

35. Defendants' July 30 grant cancellations and August 8 Demands have already heightened the threat that ESCP will be cancelled. As discussed above, if the University capitulates to the August 8 Demands, I believe that it is highly likely that UCLA will cancel ESCP.

36. My ESCP responsibilities make up half of my UCLA appointment and, as such, roughly half of my salary. If ESCP is cancelled, I will have to either secure a full appointment as Lecturer, find work elsewhere, or accept this salary loss. The federal government recently cancelled a large grant to SEIS for ideological reasons. Due to this cancelation, SEIS has been forced to lay off some of its lecturers. I am hesitant to return to a full Lecturer appointment at SEIS because I believe doing so would require SEIS to layoff or reduce the appointment of another Lecturer and I do not want to cause a coworker and fellow UC-AFT member to lose work.

37. Cancellation of ESCP would also cause me great personal and professional loss. I have led the program for three years and before that I spent a year developing the program and ferrying it through the UCLA course approval and degrees and programs approval process on my own, unpaid time. I feel deeply connected to this program, the teachers it trains, and the community that it supports, and it will be a great personal and professional loss to me if ESCP is cancelled.

38. Cancellation of ESCP would also harm the US K-12 education system and especially harm Southern California's K-12 education system. In its first three years, ESCP

9

DECL. OF DARLENE LEE ISO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION                                   Case No. 3:25-cv-07864-RFL

1 trained more than 100 ethnic studies teachers. While it draws teachers from across the country, program participants are primarily from Southern California, where they either already teach or will teach once they complete their training. If ESCP is cancelled, our national and regional capacity to train new ethnic studies teachers will be harmed.

39. This reduction in training capacity would be exceptionally harmful to the California education system. A California state requirement that every public school student take an ethnic studies course before they graduate will soon go into effect. California does not have enough trained ethnic studies teachers to meet this requirement, though, and will need to train many more to do so. Cancelling ESCP and reducing the state's capacity to train ethnic studies teachers will undermine the California education system's ability to satisfy this new requirement.

40. For most ESCP participants, they are the only ethnic studies teacher at their school site and have little support at their school site. ESCP provides these teachers with other essential support outside of training, including teaching materials and access to a greater community of ethnic studies teachers. If ESCP is cancelled, teachers who have gone through the program will be left without a key source of support for their ethnic studies curriculum.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this  5   day of October, 2025.

*Darlene Lee*

Darlene Lee
Lecturer and Faculty Advisor, UCLA
   School of Education and
   Information Studies
Member, UC-AFT
Executive Committee Member, UC-AFT
   UCLA Chapter

10

DECL. OF DARLENE LEE ISO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION     Case No. 3:25-cv-07864-RFL