1
2
3
4
5                    **UNITED STATES DISTRICT COURT**
6                    **NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, et al., <br><br> Defendants. | Case No. 3:25-cv-07864-RFL <br><br> **DECLARATION OF MONICA MARTINEZ IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

I, Monica Martinez, declare as follows:

1. I am a Clinical/Administrative Care Partner at the University of California, Los Angeles ("UCLA") Health's Ronald Reagan Medical Center. I have worked for UCLA since 2001.

2. This declaration is submitted in support of Plaintiffs' Motion for a Preliminary Injunction.

3. I am over the age of 18 and competent to testify as to the matters set forth in this declaration based on my own personal knowledge.

4. I am a member of the American Federation of State, County, and Municipal Employees, Local 3299 ("AFSCME") and currently serve as AFSCME's Patient Care Unit Vice President and a member of AFSCME's bargaining team.

5. AFSCME is a labor organization and exclusive collective bargaining representative of more than 40,000 service workers, patient care technical workers, skilled craft workers, and more at the ten University of California ("UC") campuses, five medical centers, numerous clinics and research laboratories, and UC College of the Law, San Francisco. Since 1948, AFSCME has prided itself on effectively representing UC workers while relentlessly fighting to provide social justice and economic opportunity not just to UC workers, but to the greater public. AFSCME's diverse membership includes approximately 79 percent people of color.

6. AFSCME represents three bargaining units at UC: a systemwide Service workers unit (the "SX Unit"), a systemwide Patient Care Technical workers unit (the "EX Unit"), and a Skilled Craft workers unit at the University of California, Santa Cruz campus. AFSCME's most recent Collective Bargaining Agreements ("CBAs") with UC covering the EX and SX Units expired in 2024. While AFSCME has been engaged in negotiations with UC for successor agreements for more than a year, these negotiations have not been successful, and UC has recently imposed its last, best, and final offer ("LBFO") on the EX and SX Units.

7. As the Patient Care Unit Vice President, I am responsible for representing patient care unit employees when reviewing contract proposals and during bargaining sessions. I have served as a member of AFSCME's bargaining committee since 2008 and have been involved in bargaining for at least four contract renewals.

//

**Awareness of the Trump Administrations Actions**

8. I am aware that in or around late July or early August, 2025, Defendants suspended approximately $584 million in federal funding for UCLA. It is my understanding that Defendants suspended these funds claiming that it was doing so in connection with its investigation of UCLA and/or UC for alleged antisemitism and other alleged violations of Title VI, Title VII, Title IX, and has cited these pending investigations and/or UC's alleged policies regarding race and transgender people, as the basis for the suspension of federal funds from UCLA.

9. I understand that in late July or early August, the Trump Administration made a series of demands to UCLA that were memorialized in a letter dated August 8 ("August 8 Demands"). UC has not shared the exact contents of the Demands from the Trump Administration, which contributes to an atmosphere of fear and uncertainty for AFSCME's members.

10. Based on reporting in the press about the Demands, I understand that the Trump Administration is threatening to impose approximately $1.2 billion in fines and other financial penalties if UCLA does not accede to its Demands. I am also aware that the Demands include a series of harmful policy changes, which I understand to include:

- Cooperation between UCLA and federal law enforcement, which I understand to include expanded collaboration with Immigration and Customs Enforcement ("ICE"); and
- Granting the government access to UCLA documents, records, and data not protected by attorney-client privilege, including confidential personnel files for our members.

11. I am also aware that in August 2025 UCLA Health issued a new policy that changed its policies regarding cooperation and collaboration with federal law enforcement, including ICE. Under this new policy, UCLA Health expanded ICE officers and other federal law enforcement personnel's access to UCLA Health facilities, staff, and patients. The policy instructs UCLA Health staff to permit ICE officers to enter private patient care areas in greater numbers than necessary to maintain custody of a patient and requires staff to defer to ICE officers' demands to discharge a patient, regardless of whether staff believes it is safe to do so given the patient's condition. The policy places no limits on ICE officers' discretion to interrogate or potentially detain staff or other patients once they have entered private patient care areas, does not require them to present a judicial warrant or court order or otherwise demonstrate

that their detention of a patient is legal before entering a UCLA Health facility, and does not even require ICE officers to identify or unmask themselves when they enter UCLA Health facilities.

12. This new UCLA policy aligns with the August 8 Demand that UCLA cooperate with federal law enforcement. The fact that the new policy complies with one of the Demands and the fact that UCLA issued the new policy around the same time as the Demands, leads me to think and fear that UC is already giving in to the pressure and is starting to obey even though UC and the Trump Administration have not reached a formal agreement to my knowledge.

**Impact of the Trump Administration's Actions on AFSCME Members**

13. Defendants' actions and demands have caused significant harm to AFSCME members and threaten further imminent harm if UC capitulates to the August 8 Demands.

14. A large portion of AFSCME's members are immigrants and/or Latino-American. Many of these members fear contact with ICE officers due to ICE's recent and well documented history and practice of racially targeted detention and abduction of both immigrants and US citizens, the inhumane conditions it has imposed on many detainees, the barriers it has placed in front of family members, friends, and legal representatives attempting to locate detained individuals, and its rapid removal of many detainees from the country, often in violation those detainees' statutory and due process protections. Based on this recent history, these members have a reasonable fear that ICE officers will target them based on their race and perceived immigration status and believe that contact with ICE officers carries a significant risk of detention and irreparable harm to their immigration practices, for non-citizen members.

15. Recently, ICE personnel have increased their presence in and around Ronald Reagan Medical Center. ICE has set up a command center in a park in front of an FBI building a half mile away from Ronald Reagan Medical Center and ICE personnel are frequently present in and around that park. Many AFSCME members pass by this ICE command center on their way to work at Ronald Reagan Medical Center. Many coworkers have expressed their fear that they may be stopped and detained while passing by the ICE command center to me.

16. ICE officers have also entered the Ronald Reagan Medical Center on at least one occasion. In that instance, four to six masked ICE officers accompanied a detained patient into the

Emergency Room and refused to leave the patient area even when staff instructed them to do so. I spoke with multiple AFSCME members and other staff who were very upset by the ICE officers' presence, believed that their presence disrupted patient care, and were concerned that the ICE officers would begin questioning other patients and staff in the Emergency Room, potentially resulting in detentions. In fact, AFSCME members were so upset that, within two hours of the ICE officers arriving, multiple members, including myself, organized a delegation to present our concerns to the Medical Center's CEO. The ICE officers remained in the Emergency Room for at least eight hours on that occasion.

17. I am aware of multiple instances in which both non-citizen and citizen AFSCME members have called in sick to avoid potential contact with ICE officers at work. I suspect that this has happened on far more occasions than I am aware of, but my colleagues do not have a practice of reporting every such instance to me.

18. Should UC capitulate to the August 8 Demand for expanded cooperation with federal law enforcement, I fear that ICE will be a more regular presence at Ronald Reagan Medical Center and other UCLA Health and UCLA campus facilities. Increased ICE presence poses an imminent risk of serious and potentially irreparable harm to AFSCME represented employees. Increased ICE presence will cause further workplace disruptions like the incident described above, cause more AFSCME-represented employees to sacrifice pay and risk disciplinary consequences by calling out sick to avoid interactions with ICE officers, and potentially lead to AFSCME-represented employees' detention by ICE officers, which could result in irreparable harm in the form of negative immigration consequences and possible removal from the country.

19. Should UC capitulate to the August 8 Demand to allow the federal government access to UCLA records, ICE officers may be granted access to AFSCME-represented employees' employment records, which contain their home address, immigration information, and other sensitive information. If granted this access, I believe that it is likely that ICE officers will use it to target non-citizen AFSCME members for questioning and detention, which could also result in irreparable harm to their immigration status and potential removal from the country.

//

//

**Impact of the Trump Administration's Actions on AFSCME's Negotiations with the University for a New CBA**

20. The Trump Administration's actions and demands have caused significant harm to AFSCME and AFSCME members due to their impact on negotiations for a new CBA and threaten further imminent harm if UC capitulates to the August 8 Demands.

21. AFSCME began bargaining with the University for a successor CBA covering the EX and SX Units 16 months ago. Pay and benefits have been a persistent point of contention between AFSCME and UC during bargaining and we have made little progress towards agreement on financial terms.

22. In April 2025, UC presented its LBFO to AFSCME. In its LBFO, the University made no movement from its previous position on pay, benefits, and other financial terms. As a result of this intransigence, the offer was unacceptable to AFSCME and its members and we rejected it.

23. When it presented its LBFO, UC cited the Trump Administration's threats against the University, and especially its threats to make further cuts to the University's various federal funding streams, as justification for its refusal to compromise or make any movement on financial terms. UC's negotiators also attempted to use the Trump Administration's threats as leverage to pressure AFSCME to take the deal, cautioning that AFSCME couldn't predict what the financial and bargaining picture might look like in the future if Defendants carry out their threats against UC. While AFSCME presented counters to the University in May 2025, the University has not made any counters or movement from its LBFO terms. UC imposed its LBFO on the SX and EX Units on July 1, 2025. I understand that the University has since cited federal grant funding cancellations and suspensions as justification for implementing and considering layoffs and other detrimental changes to AFSCME-represented employees' terms and conditions of employment.

24. I believe that if Defendants are allowed to continue to press their August 8 Demands on the University, the University will use these demands as another weapon in negotiations with AFSCME by citing Defendants' demands and the funding uncertainty they cause as reason for it to refuse to compromise on financial terms and to demand concessions from AFSCME and its members, including staffing cuts. This would irreparably harm AFSCME and its members by further impeding the bargaining

the University, the University will use these demands as another weapon in negotiations with AFSCME by citing Defendants' demands and the funding uncertainty they cause as reason for it to refuse to compromise on financial terms and to demand concessions from AFSCME and its members, including staffing cuts. This would irreparably harm AFSCME and its members by further impeding the bargaining process, extending the amount of time AFSCME-represented employees are forced to work under the University's unilaterally imposed LBFO, and potentially forcing AFSCME to agree to worse terms CBA than it would have absent Defendants' actions.

25. If the University capitulates to Defendants' August 8 Demands, I believe that it will dig in even further on its refusal to compromise on its LBFO. Specifically, I believe that the University will point to the $1.2 billion in penalties as a basis for the claim that it does not have the money to pay AFSCME-represented employees the salaries and benefits they deserve. This would also irreparably harm AFSCME and its members by further impeding the bargaining process, extending the amount of time AFSCME-represented employees are forced to work under the University's unilaterally imposed LBFO, and potentially forcing AFSCME to ultimately agree to worse terms CBA than it would have absent Defendants' actions.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 4th day of October, 2025.

*Monica Martinez*
Monica Martinez
AFSCME 3299 Member
Patient Care Unit Vice President, AFSMCE 3299
Bargaining Committee Member, AFSCME 3299